UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    GARY J. PALUMBO,                      Case No. 98-22479-JCN
                                                        Chapter 7

           Debtor.
_____

In re:

    ROBERT PALUMBO,                       Case No. 98-23679-JCN
                                                        Chapter 7

           Debtor.
_____


**DECISION AND ORDER
DENYING DEBTORS' MOTION TO REOPEN
AND TERMINATING TEMPORARY STAY OF
STATE COURT LITIGATION**


PAUL R. WARREN, United States Bankruptcy Judge

      Gary Palumbo and his brother Robert Palumbo ("Palumbos") filed separate—but mirror-image—emergency motions requesting that this Court reopen their long-closed Chapter 7 bankruptcy cases, to address an unscheduled debt arising out of a guaranty.[1] (ECF Nos. 15 & 16, respectively). The motion was brought just days before the State Court was scheduled to hold a trial on the matter. The plaintiff in the State Court action, Patti Billard ("Billard"), opposes the

---

[1] The relief sought and the underlying facts are sufficiently similar—if not identical—so that both motions can be addressed by the Court in a single decision, to be entered on the docket in each case. The motions will be identified as "ECF Nos. 15 & 16," to signify their docket number on each case docket, in the order listed in the caption of this Decision.

Palumbos' motion by way of a separate—but mirror-image—affidavit in opposition. (ECF Nos. 23 & 24, respectively). The Court entered an Order shortening time for a hearing on the motions, so the issue could be decided in a timely manner for the convenience of the State Court and the litigants. (ECF Nos. 16 & 17, respectively).

Because the State Court is a judicial tribunal with concurrent jurisdiction to determine the dischargeability of a debt not scheduled in a bankruptcy case, and because that issue—asserted as an affirmative defense in State Court—is at the very heart of the litigation ready for trial before Justice Rosenbaum, Monroe County Supreme Court, the Palumbos have failed to demonstrate cause to reopen their cases under 11 U.S.C. § 350(b). Additionally, and alternatively, given the fact that the issue of whether the unscheduled debt was discharged by operation of federal law can be—and must necessarily be—decided by the State Court at trial, this Court exercises its discretion to permissively abstain from hearing the matter under 28 U.S.C. § 1334(c)(1), in the interest of justice and the interest of comity with the State Court. The Palumbos' motions to reopen are **DENIED**.

## I.
## JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(1), (b)(2)(A), and (b)(3).

## II.
## ISSUE

The issue presented is whether the Palumbos have demonstrate cause to reopen their long-closed no-asset cases under 11 U.S.C. § 350(b), for the purpose of determining the dischargeability of a debt not scheduled in their bankruptcy cases. The answer is no.

2

# III.

## FACTS

To understand this story, we must go back to the beginning—and that was a very long time ago. Billard alleges that 22 years ago, in 1994, the Palumbos entered into guaranties for a loan to Mark Palumbo. (ECF Nos. 15 & 16, Compl.). The Palumbos filed separate Chapter 7 bankruptcy petitions 18 years ago, in 1999. (ECF Nos. 1 & 1). In both cases, the Clerk's Office sent a "no asset, no bar date" notice to creditors under Rule 2002 FRBP. The parties agree that Billard was *not* listed as a creditor by the Palumbos. (ECF Nos. 15 & 16 ¶ 9). The Palumbos received a discharge under 11 U.S.C. § 727(b), shortly after each case was filed.

In 2006, Billard sued the Palumbos in Monroe County Supreme Court. (ECF Nos. 15 & 16, Compl.). Several years later, in 2009, counsel to the Palumbos sought and was granted leave by the State Court to amend the Palumbos' answer to assert discharge in bankruptcy as an affirmative defense under NY CPLR § 3018(b). (*See* ECF Nos. 15 & 16, Decision & Order of June 8, 2009). After receiving permission of the State Court, the Palumbos amended their answer and asserted that their debt to Billard was discharged in bankruptcy, as an affirmative defense. (ECF Nos. 15 & 16 ¶ 11).

On August 26, 2016, over 18 years after their bankruptcy case was closed, over 10 years after the State Court action by Billard on the guaranty was commenced, and over 7 years after they amended their answer in the State Court action to assert their discharge in bankruptcy as an affirmative defense, the Palumbos filed voluminous motions demanding that this Court exercise its discretion and reopen their long-ago closed cases under § 350(b) of the Code (ECF Nos 15 & 16). The Palumbos' motion asked for an emergency hearing, on shortened time, because the 10-year-old State Court action had—like the tortoise racing the hare—crept around the track and was at the

3

finish line ready for a trial, scheduled for September 12, 2016.[2] (*See id.* ¶ 12). The Palumbos ultimately seek relief in the nature of a declaratory judgment, determining that the debt to Billard (if any) on their guaranties (if any) had been discharged by operation of law under 11 U.S.C. § 727. (*Id.* ¶¶ 36-41). In the alternative, they seek to amend the schedules in their long-closed cases to add Billard as a creditor. (*Id.* at 20). The Palumbos also seek, and this seems to be their true desire, to have this Court revisit the decision in *In re Tucker*, 143 B.R. 330 (Bankr. W.D.N.Y. 1992) (Ninfo, J.)—a decision that the State Court cited at length in its June 8, 2009 Decision and Order granting the Palumbos leave to assert their bankruptcy discharge as an affirmative defense. (*Id.* ¶¶ 36-41). The Palumbos assert that this Court must give the State Court guidance on the discharge question.

In opposition, Billard claims that great prejudice would befall her if the bankruptcy case was reopened for the purpose of answering the discharge question. (ECF Nos. 23 & 24 ¶ 7). Billard also claims that if she had received notice of the bankruptcy, she could have told the Chapter 7 Trustee about undisclosed assets, and she was prejudiced by that lost opportunity. (Id. ¶¶ 7-8). Billard's opposition completely misses the mark.

IV.

DISCUSSION

The Bankruptcy Code vests bankruptcy courts with discretion to determine whether to reopen a closed case "to administer assets, *to accord relief to the debtor*, or for other cause." 11 U.S.C. § 350(b) (emphasis added); *see also* Rule 5010 FRBP. In determining whether "cause" exists to reopen a closed case, courts "'may consider numerous factors including equitable

---

[2] In their lengthy supplemental response to Billard's opposition, the Palumbos complain that they have had only a brief time to review Billard's position. (ECF Nos. 25 & 25 ¶ 2). The Court shortened time at the Palumbos' request, resulting in a predictably compressed submission schedule. For the Palumbos to then complain about the lack of time is mystifying.

4

concerns, and ought to emphasize substance over technical considerations.'" *In re Christensen*, No. 09-20299-PRW, 2015 Bankr. LEXIS 3506, at *8 (Bankr. W.D.N.Y. Oct. 16, 2015) (quoting *In re Wiggins*, No. 12-13341, 2013 Bankr. LEXIS 3587, at *3 (Bankr. S.D.N.Y. Aug. 29, 2013) and *In re Wilson*, 492 B.R. 691, 695 (Bankr. S.D.N.Y. 2013)); *see also In re Emmerling*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997) (discussing cause to reopen for equitable concerns). The factors for the Court to consider include:

(1) the length of time that the case was closed;

(2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case;

(3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum;

(4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

(5) the extent of the benefit to the debtor by reopening; and

(6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen.

*Christensen*, 2015 Bankr. LEXIS 3506, at *8; *Wilson*, 492 B.R. at 695. Here, the first, second, and fourth factors are determinative.

A. **The Case Has Been Closed for 18 Years.**

The Palumbos argue that, absent prejudice to Billard, the mere passage of time is not determinative—and, as the Palumbos see it, Billard is not prejudiced because her attorney is working on the State Court litigation on a contingent fee basis. (ECF Nos. 15 & 16 ¶ 38). While the argument has some rudimentary charm, it also misses the mark in this case. Here, the Billard-Palumbo fracas did not lie quietly underground from 1994 until 2016, like a cicada. Following the 18 years since the Palumbos' bankruptcy cases were closed, the Billard-Palumbo matter has been the subject of State Court litigation for the past 10 years. And 3 years into that litigation—7 years

5

ago—the Palumbos moved the State Court for leave to amend their answer, to assert the affirmative defense of discharge in bankruptcy under New York Law. NY CPLR § 3018(b). By Decision and Order dated June 8, 2009, the Presiding Justice in the State Court action granted the Palumbos leave to serve their amended answer—which they did—and the State Court assumed jurisdiction over the affirmative defense. (*See* ECF Nos. 15 & 16, Decision & Order of June 8, 2009). The State Court decision made it clear that whether the alleged guaranties are genuine (or forgeries) and whether the Billard debt was discharged in bankruptcy are related issues to be proved at trial. (*Id.*). So, here the passage of time really does matter.

Over the course of the last 10 years, Billard has prepared her case for trial before the State Court, and that Court has now scheduled the trial for September 12, 2016. One would assume that the Palumbos have also prepared for trial in State Court, as the last decade slipped away. The Palumbos argue that Billard cannot "now claim prejudice through her own decision to plow forward with the State Court Action." (ECF Nos. 24 & 25, Supp. Mem. of Law ¶ 7). But it was the Palumbos who, for the last 7 years, have placed their bankruptcy discharge, as an affirmative defense, before the State Court. And it was the Palumbos who plowed forward with that state law affirmative defense. "These circumstances underscore that the filing of the Motion to Reopen is little more than an attempt to escape a state court lawsuit in which the Movants have become uncomfortable." *In re Odin Demolition & Asset Recovery, LLC*, 544 B.R. 615, 636 (Bankr. S.D. Tex. 2016). The first factor weighs against the Palumbos and in favor of Billard.

### B. The State Court Has Jurisdiction to Determine the Issue Which Is the Basis for Reopening the Case.

The bankruptcy court has exclusive jurisdiction to determine the dischargeability of intentional tort debts. 11 U.S.C. § 523(c)(1); *see also* Rule 4007 FRBP advisory committee's note (1983). "Jurisdiction to determine dischargeability of . . . debts [other than intentional tort debts] is

held concurrently by the bankruptcy court and any appropriate non-bankruptcy forum." *In re Candidus*, 327 B.R. 112, 116-17 (Bankr. E.D.N.Y. 2005) (Feller, J.) (citing 28 U.S.C. § 1334(b) and Rule 4007 FRBP committee note (1983)).

> There are four avenues to obtain a judicial determination of dischargeability post-discharge and case closure: i) if the creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over the lawsuit can decide whether the debt falls within any of the exceptions to discharge, ii) the debtor may be able to remove the collection effort to the bankruptcy court, iii) either the debtor or the creditor can move to reopen the bankruptcy case pursuant to Fed. R. Bankr. P. 4007(b) for the purpose of filing a complaint to determine dischargeability, and iv) the debtor can bring an action against the creditor in the bankruptcy court to enforce the § 524(a)(2) discharge injunction.

*Id.* at 118 (citing *In re Strano*, 248 B.R. 493, 503 (Bankr. D.N.J. 2000); *In re Mendiola*, 99 B.R. 864, 870 (Bankr. N.D. Ill. 1989)).

"The bankruptcy courts and state courts have concurrent jurisdiction to determine the dischargeability of unscheduled debts." *Candidus*, 327 B.R. at 119 (citing *First Nat'l Ins. Co. of Am. v. Bartomeli*, 303 B.R. 254, 269 (Bankr. D. Conn. 2004); *In re McGregor*, 233 B.R. 406, 408 (Bankr. S.D. Ohio 1999); *In re Massa*, 217 B.R. 412, 419 (Bankr. W.D.N.Y. 1998), *aff'd*, 187 F.3d 292 (2d Cir. 1999); *Fidelity Nat'l Title Ins. Co. v. Franklin*, 179 B.R. 913, 924 (Bankr. E.D. Cal. 1995); *Adam Glass Serv., Inc.*, 173 B.R. at 843; *In re Szczepanik*, 146 B.R. 905, 913 (Bankr. E.D.N.Y. 1992); *In re Thibodeau*, 136 B.R. 7, 10 (Bankr. D. Mass. 1992); *In re Guzman*, 130 B.R. 489, 491 (Bankr. W.D. Tex. 1991)).

The New York Court of Appeals has long recognized that the State Courts have "the power, subject to statutory exception, to determine the effect of a [bankruptcy] discharge." *State v. Wilkes*, 41 N.Y.2d 655, 657 (N.Y. 1977) (citing *Chevron Oil Co. v. Dobie*, 40 N.Y.2d 712, 714 (N.Y. 1976) (holding "a State court has an inescapable obligation to interpret and apply the Federal

statute")); *see also Kavanagh v. 107-18 Realty Ass'n*, 114 A.D.3d 909, 909 (2d Dep't 2014). "The court in *Dobie*, however, enunciated two other legal principles that remain a vital part of this State's jurisprudence. The first is the general principle that New York state courts have concurrent jurisdiction with federal courts to interpret the Bankruptcy Code. *The second is the proposition that New York state courts have the authority to determine the effect of a debtor's discharge in bankruptcy on third parties . . . ."* *Upper Manhattan Empowerment Zone Dev. Corp. v. Van Brackle Enters., Inc.*, 798 N.Y.S.2d 849, 854 (Sup. Ct. New York Cnty. 2005) (emphasis added) (citations omitted); *see also Gleeson v. Phelan*, No. 654187/2015, 2016 N.Y. Misc. LEXIS 1993, at *3 (Sup. Ct. New York Cnty. 2016).

The Palumbos argue that Billard is "forcing [the] State Court to decide the issue" and "the State Court would rather the bankruptcy court decide the [discharge] issue prior to trial." (ECF Nos. 24 & 25, Supp. Mem. of Law ¶ 16). But it was the Palumbos that elected to take the affirmative defense route under NY CPLR § 3108(b), after asking the State Court and being granted permission to amend their answer in 2009. The State Court acquired jurisdiction over whether the Billard debt was discharged when the Palumbos asserted the Discharge Order as an affirmative defense in the State Court action. *See Candidus*, 327 B.R. at 119. The Palumbos subjected themselves to the State Court's jurisdiction on the issue of whether the Billard debt was discharged by operation of law. The State Court has the jurisdictional authority to interpret and apply the Bankruptcy Code. *See Dobie*, 40 N.Y.2d at 714. This Court has no doubt whatsoever that the State Court can and will competently answer the question of whether the debt to Billard (if one exists) was discharged by operation of federal law. The New York State courts have handled that task as a matter of their concurrent jurisdiction for years. This Court will not permit the

8

Palumbos to engage in a match of jurisdictional rope-a-dope[3] in their fight with Billard, particularly now that the fight has reached the 15th round—in the form of a date certain for trial.

The Palumbos, in their supplemental memorandum of law, additionally cite a line of cases that hold that cause exists to reopen a closed bankruptcy case to permit the bankruptcy court to interpret and enforce its own orders. (ECF Nos. 24 & 25, Supp. Mem. of Law ¶ 14) (citing *In re Atari, Inc.*, No. 13-10176 (JLG), 2016 Bankr. LEXIS 1779, at *24 (Bankr. S.D.N.Y. Apr. 20, 2016) (discussing the enforcement of its own Chapter 11 confirmation order); *see also Credit One Fin. v. Anderson*, No. 15-cv-4227 (NSR), 2016 U.S. Dist. LEXIS 77966, at *17-18 (S.D.N.Y. June 14, 2016) (discussing the importance of enforcement of the discharge order in giving the debtor a fresh start); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, No. 14-cv-764 (RJS), 2015 U.S. Dist. LEXIS 40238, at *16-17 (S.D.N.Y. Mar. 27, 2015) (enforcing its own judgment and injunctive order); *In re Texaco Inc.*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995) (noting that the bankruptcy court should not be prevented from enforcing the discharge injunction by principles of mandatory abstention)). However, these cases largely involve the enforcement of Chapter 11 confirmation orders or injunctive orders—or generally discuss the importance of enforcing a court's own order when violated. The cases used by the Palumbos do not involve situations where the state and federal courts share concurrent jurisdiction or where—as here—the State Court has assumed jurisdiction over the scope of the Discharge Order. The Court finds that this second factor weighs heavily against the Palumbos and in favor of Billard.

---

[3] The rope-a-dope is a boxing fighting style commonly associated with Muhammad Ali (1942-2016), featured during his October 30, 1974 match against George Foreman. Ali won that historic and epic battle by knockout at the end of the 8th round.

9

### C. The Palumbos Will Suffer No Prejudice Should the Court Deny the Motion to Reopen.

The Palumbos make much of the lack of monetary harm to Billard should their cases be reopened. For their part, the Palumbos claim that "absent direction from the Bankrutpcy Court on whether Ms. Billard's debt has been discharged, the Plaintiff will continue to seek judgment in the State Court Action, and the State Court will continue to proceed to a trial that may result in a judgment exceeding $100,000 against the [Palumbos]." (ECF No. 15 & 16 ¶ 38).

That alleged "harm" deserves little more than a polite tip of the cap. The State Court, in the exercise of its concurrent jurisdiction, needs no direction from the bankruptcy court on the discharge issue. The answer to that issue—an affirmative defense in the action over which the State Court has jurisdiction—is found in the Bankruptcy Code. The delay and expense that will befall Billard were this Court to allow the piecemeal litigation of the long-in-the-tooth State Court litigation is prejudicial to her. The emergency motion submitted to this Court by the Palumbos is nearly 100 pages in length—all designed to convince the Court to take up the discharge issue over which the state and federal court have concurrent jurisdiction. One can't help but wonder why—over the course of the last 7 years—a motion seeking pre-trial relief was not made by the Palumbos in the State Court action, after the Palumbos were given permission to assert their discharge in bankruptcy as an affirmative defense. Of the four avenues available to the Palumbos to seek a judicial determination of dischargeability of an unscheduled debt post-discharge and case closure, they elected to submit that issue to the jurisdiction of the State Court. The Court finds that this third factor also weighs against the Palumbos and in favor of Billard.

### D. Permissive Abstention Is Warranted.

The Court is vested with discretion to permissively abstain from hearing the underlying issue "in the interest of justice, or *in the interest of comity with State courts* or respect for State

10

Case 2-98-22479-JCN    Doc 27    Filed 09/01/16    Entered 09/01/16 17:00:23    Desc Main
Document    Page 10 of 12

law." 28 U.S.C. § 1334(c)(1) (emphasis added). The litigation posture of the action in Monroe County Supreme Court, coupled with the fact that the Palumbos have submitted the dischargeability issue to the jurisdiction of the State Court, cries out for this Court to exercise its discretion and permissively abstain. The Court may, in the exercise of discretion, permissively abstain based on one or more of the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden [on the court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*MAA-Sharda, Inc. v. First Citizens Bank & Trust Co.*, No. 14-21380-PRW, 2015 Bankr. LEXIS 1176, at *27-28 (Bankr. W.D.N.Y. Apr. 9, 2015) (citing *In re Exeter Holding, Ltd.*, No. 11-77954-ast, 2013 Bankr. LEXIS 1008, at *10 (Bankr. E.D.N.Y. Mar. 14, 2013); *Tech. Outsource Solutions, LLC v. ENI Tech., Inc.*, No. 02-CV-6433, 2003 U.S. Dist. LEXIS 1475, at *13-16 (W.D.N.Y. Jan. 23, 2003)).

Here the Court finds that the fourth, sixth, tenth, eleventh, and twelfth factors weigh heavily in favor of permissive abstention—perhaps with the fourth and tenth factors weighing most heavily. The State Court has assumed jurisdiction over the issue the Palumbos seek to remove to this Court for determination—and the State Court has concurrent jurisdiction to decide that issue. The State Court action has dragged on for over 10 years and is now ready for trial. Further, the Palumbos' emergency motion requesting that this Court decide the discharge issue appears to be an attempt at

11

forum shopping. In 2009, the State Court granted the Palumbos' motion to assert their discharge as an affirmative defense to the State Court action. And now, 7 years after submitting to the State Court's jurisdiction, the Palumbos run to bankruptcy court, not just to decide the discharge issue, but also in hopes that this Court will revisit the *Tucker* decision. The State Court has jurisdiction to determine the discharge issue by following the federal case law it finds persuasive, as there is no binding precedent on that issue in this Circuit.

The Court finds that—in the exercise of its discretion—and in the interest of comity with the State Courts, permissive abstention is warranted under 28 U.S.C. § 1334(c)(1).

## V.

## CONCLUSION

The Palumbos have failed to demonstrate cause to reopen their bankruptcy cases under 11 U.S.C. § 350(b). The underlying issue is jurisdictionally and properly before the State Court for adjudication. Further, the Court finds it appropriate to exercise its discretion and permissively abstain under 28 U.S.C. § 1334(c)(1). The Palumbos' motions to reopen under 11 U.S.C. § 350(b) are **DENIED**. The other requests for relief sought by the Palumbos in their motions are **MOOT**. The temporary stay of the State Court litigation is **TERMINATED**. Counsel to the Palumbos is directed to hand-deliver a copy of this decision to Justice Rosenbaum of the Monroe County Supreme Court by September 2, 2016 by 10:00 a.m.

**IT IS SO ORDERED.**

DATED: September 1, 2016 _____/s/_____
    Rochester, New York         HON. PAUL R. WARREN
                                          United States Bankruptcy Judge